## CENTAUR CO. v. HUGHES BROS. MFG. CO.

(Circuit Court of Appeals, Fifth Circuit. December 13, 1898.)

### No. 758.

UNFAIR COMPETITION IN TRADE—IMITATION OF LABELS—INJUNCTION.

Where the general appearance of the bottles and labels used in placing upon the market a new preparation of Castoria is so nearly like that of those used by complainant for many years in the sale of its preparation under the same name as to deceive ordinary purchasers, complainant's right to a preliminary injunction is not defeated because changes have been made in the shape and color of the bottle, and in the tint of the labels, such changes being so slight as not to attract attention, nor by changes in the printed matter upon the labels, the form and arrangement of the part which covers the front of the bottle being such as to deceive, and to indicate a purpose to do so.[1]

Pardee, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Suit in equity by the Centaur Company against the Hughes Bros. Manufacturing Company for unfair trade, in imitating complainant's bottles and labels. An application for a preliminary injunction was denied, and complainant appeals.

Edmund Wetmore and De Edward Greer, for appellant.

Wm. Thompson, for appellees.

Before PARDEE, Circuit Judge, and SWAYNE and PARLANGE, District Judges.

SWAYNE, District Judge. The bill, answer, and exhibits in this case raise the same issues as those raised in the case of Centaur Co. v. Neathery, 91 Fed. 891, and Same v. Reinecke, Id. 1001. The questions of law discussed in those cases apply to this, and the main exhibits of the labels and wrappers in which the respective parties prepared their packages, and upon which the decision of the case turns, are as follows: "Exhibit A and Exhibit B"; "Exhibit A, Complainant's Wrapper"; "Exhibit B, Respondent's Wrapper." While the issues made by the bill, answer, and Exhibits A and B, in this case, are similar to those in the cases of Centaur Co. v. Neathery, 91 Fed. 891, and Same v. Reinecke, Id. 1001, an examination of the label and wrapper used by appellee shows a studied effort to comply with the letter of the law, and at the same time avoid the spirit thereof. Appellee herein answers "that to avoid the appearance, even, of infringing upon the rights of complainant, * * * it particularly selected a bottle different in color, using flint or clear transparent, where complainant used green tint, glass; it particularly selected a label on said bottle different in color, wording, and design from the complainant's; that said bottle used by it is different in form from the bottle of the complainant"; "that the wrapper adopted by defendant (Exhibit B) was made as dissimilar to the wrapper of complainant as, in the opinion of defend-

[1] As to unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

ant, it could adopt, and yet preserve the preparation of Castoria, and place the same before the public." It is difficult to understand the last clause of the above selection from defendant's answer. Just what the similarity in color, form, and arrangement of the printed matter on the wrapper of the bottle of defendant's Castoria had to do with "preserving the preparation," and "placing it before the public," we do not see, unless it was to obtain for defendant's preparation a greater sale by deceiving the public into the impression that they were buying complainant's goods. Nor do we find the statement true that the bottle and label were so different as to fully notify the public that they were buying the goods of the respondent, and not those of the complainant. It is true that there is a very slight difference in the size and shape of the bottles used, that is apparent when you carefully compare the packages of complainant and respondent; but it has been made so slight as never to be noticed without such comparison, and is such a difference as would not be readily remembered by the ordinary purchaser. The same is true of the color or tint of the bottles and labels of the parties. It will be readily seen that respondent's label is on pure white paper, while that of complainant is slightly cream-tinted; but how many purchasers of the remedy would ever notice the

Exhibit "A," Complainant's Wrapper.

difference, unless it was especially called to their attention? And while the respondents have placed the words "Dr. Hughes" at the top of the label, instead of "900 Drops," as used by the complainant, they have printed it in white letters on a black ground, in exactly the same size, position, and shading as used by complainant. On respondents' label the word "Castoria" is printed, not only in black letters on a shaded ground exactly like that of complainant, but the letters are a perfect copy in shape and position of those of complainant. At the foot of respondents' label there is another change, in wording only, "See Directions on Label" being substituted for the words used by complainant, as follows: "At 6 months old 35 Doses—35 Cents;" but respondents have placed them in such type, position, and shading as not to be noticed by the general public. Then, respondents have replaced the signature of "Chas. H. Fletcher, New York," used by complainant, with that of "John V. Hughes, Dallas, Texas," in similar script, on the lower part of the label; but, again, the change is of such a size and nature as not to attract the attention of the general purchaser. All the balance of the label of respondents—the wording, type, spacing, and size—is an exact copy of that of complainant in every particular, producing the same general effect upon the general customer. Why

Exhibit "B," Defendant's Wrapper.

any or all of these similarities are necessary to "preserve the preparation," and "place it before the public," is not explained in the briefs, nor was it suggested at the hearing. There are many different forms of bottles, and it would not be difficult to suggest innumerable forms and combinations of type and color of paper that could not possibly be mistaken for those of complainant; yet with all the desire of respondents, as expressed in the answer, "to avoid the appearance, even, of infringing upon the rights of complainant," they failed to discover any of them. It is true that respondents have completely changed the inscriptions and general appearance of that part of their labels that covers the sides and back of the bottle, and claim much credit therefor; but inasmuch as the public generally look only to the front of the label, and purchase by the general form thereof, we think these changes of but little account. Had the same change in the general effect of the label on the front of the bottle been made by the respondents as they have put upon the other parts of it, it is clear they could not have been successfully accused of unfair fraudulent competition in business, nor restrained from making and selling Castoria in their own way.

On full consideration of the bill, answer, and exhibits in this case, we are of the opinion that respondents' packages of the remedy have been so bottled, labeled, prepared, and put upon the market, in such form as is calculated to deceive, and does deceive, the public into the belief that they are buying the preparation manufactured and put up by the complainant; that they have thus infringed upon its lawful rights, and are likely to interfere with its legitimate profits in the sale of its preparation, and are guilty of unfair and fraudulent business methods; and that respondents should therefore be restrained. The order of the circuit court refusing a preliminary injunction is reversed, and the cause is remanded, with instructions to grant a preliminary injunction as prayed in complainant's bill, and otherwise proceed in accordance with the views expressed in this opinion, and as equity and good conscience may require.

PARDEE, Circuit Judge (dissenting). While I agree with the conclusions reached in Centaur Co. v. Neathery, 91 Fed. 891, and in Centaur Co. v. Reinecke, Id. 1001, just decided, I am constrained to dissent from the opinion and decree in this case. In my opinion, the case made against Hughes Bros. Manufacturing Company is not sufficiently full and explicit to warrant an injunction pendente lite. The case shows that Hughes Bros. have not servilely imitated the label and wrapper used by the Centaur Company, but, on the contrary, have varied from the same enough to show to the ordinary observer that the preparation offered by them for sale was not manufactured by the Centaur Company, or by any company or person other than the defendants. The record fails to show clearly and exactly which of the marks, signs, and labels, of all those now claimed exclusively by the Centaur Company, were used during the life of the patent by the same parties to exploit the patented article named "Castoria," so that the court can determine which of such signs, marks, and labels passed into the public domain on the expiration of the patent. The record does show clearly a state of facts from which the court ought to find that the word

"Castoria," with some description of the preparation, as a label, substantially as used on the complainant's packages and on the defendants' packages, did pass into the public domain on the expiration of the patent. It was within the power of the complainant to have made this matter clear, and to have shown exactly what other of the marks and descriptions specially claimed by it, and now used by the defendants, were trade-marks not within the public domain, because not used to name and particularly describe and designate the patented article during the life of the patent. What may be shown on a final hearing with regard to these matters will control the case, and doubtless do equity between the parties; but, on the showing made at this time, I am unable to attribute error to the judge a quo in refusing the injunction pendente lite.