. IN RE L. E. WATERMAN CO,

---

TRADEMARKS; MONOPOLIES.

1. An application for a trademark for a fountain pen is properly rejected by the Commissioner of Patents when described by the applicant as follows: "The feed bar is red, and the portion of the fountain pen reservoir or handle adjacent to the feed bar is black. * * * The trademark is applied to the goods during the manufacture by coloring the feed bar red."

2. Where the effect of the granting of an application for a trademark would be to give the applicant a monopoly in the use of a product for the manufacture of certain goods, which product is free to the public to use in the manufacture of goods generally, the application will be rejected.

3. A trademark cannot be acquired in the use of color not connected with some symbol or design.

No. 593. Patent Appeals. Submitted November 15, 1909. Decided December 7, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents rejecting an application for the registration of a trademark. . *Affirmed.*

The facts are stated in the opinion.

*Mr. Samuel S. Watson* for the appellant.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents refusing appellant's application for the registration of a trademark for fountain pens. In his statement, appellant, the L. E. Waterman Company, described its mark as follows: "The feed bar is red and the portion of the fountain pen reservoir or handle adjacent to the feed bar is black. * * * The trademark is applied to the goods during the manufacture by coloring the feed bar red."

The statement that the feed bar is colored red in the course of manufacture indicates that the bar is made of material, in this instance rubber, produced in a particular way. To grant this mark would give appellant a monopoly of a product for use in feed bars of fountain pens that is free to the public to use in the manufacture of stationary goods generally, including fountain pens. Such a right is not permitted by the trademark act. *J. A. Scriven Co.* v. *Morris*, 154 Fed. 914, 85 C. C. A. 571, 158 Fed. 1020.

In the case of *Re Hanson's Trade-Mark*, L. R. 37 Ch. Div. 112, where a trademark for French coffee was claimed for a red, white, and blue label, in imitation of the French tricolor, the English court, holding that it was not entitled to registration, said: "It is the plain intention of the act that, where the distinction of the mark depends upon color, that will not do. You may register a mark, which is otherwise distinctive, in color, and that gives you the right to use it in any color you like; but you cannot register a mark of which the only distinction is the use of a color, because, practically under the terms of the act, that would give you a monopoly of all the colors of the rainbow."

But it is insisted by counsel for appellant that the trademark consists in the distinctive combination of the red feed bar and the black neck of the reservoir or handle adjacent to it. This position is entirely inconsistent with the one assumed in the statement, where the mark is claimed as an incident of the manufacture of the bar. In any event, we are unable to see just how the status of appellant is improved by this distinction. It is

well settled that a trademark cannot be acquired in the use of color not connected with some symbol or design. *A. Leschen & Sons Rope Co.* v. *Broderick & B. Rope Co.* 201 U. S. 166, 50 L. ed. 710, 26 Sup. Ct. Rep. 425; *Diamond Match Co.* v. *Saginaw Match Co.* 74 C. C. A. 59, 142 Fed. 727. In the latter case, the court said: "The primary colors, even adding black and white, are but few. If two of these colors can be appropriated for one brand of tipped matches, it will not take long to appropriate the rest. Thus, by appropriating the colors, the manufacture of tipped matches could be monopolized by a few vigilant concerns, without any patent whatever. Indeed, it is customary for a large company like the defendant to issue many brands of matches, with heads of different colors. It is now making tipped matches. If, by appropriating two colors for each brand, it could monopolize them, it would soon take all the colors not in use by the complainant, and thus cover the entire field at once." We know of no principle upon which the contention of appellant in this case can be upheld.

The decision of the Commissioner of Patents, therefore, is affirmed, and the clerk is directed to certify these proceedings as by statute required.                    *Affirmed.*